**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MICHAEL C. DICKMAN,<br><br>　　　　　　　　Plaintiff,<br><br>vs.<br><br>ALVARADO HOSPITAL MEDICAL CENTER, INC., et al.,<br><br>　　　　　　　　Defendants. | CASE NO. 02CV2371-BEN (WMc)<br><br>**ORDER:**<br><br>**(1) GRANTING DEFENDANTS' MOTIONS *IN LIMINE* PRECLUDING TESTIMONY OF DR. ALFRED J. KOONIN [Doc. Nos. 340 and 346];**<br><br>**(2) GRANTING DEFENDANT ALVARADO HOSPITAL MEDICAL CENTER INC.'S MOTION FOR SUMMARY JUDGMENT [Doc. No. 351];**<br><br>**(3) GRANTING DEFENDANTS GEO GROUP, JUAN ASUNCION, JR., M.D., JARME CONDELL'S MOTION FOR RECONSIDERATION OF COURT'S DENIAL OF THEIR MOTION FOR SUMMARY JUDGMENT [Doc. No. 309]; AND**<br><br>**(4) DENYING PLAINTIFF'S MOTION FOR WRITTEN COMMUNICATION WITH HIS EXPERT [Doc. No. 359]** |

　　　　Plaintiff Michael C. Dickman ("Dickman"), a prisoner, has filed a *pro se* First Amended Complaint alleging that, when incarcerated in the Western Regional Detention Facility in or about late 2000 and 2001, he received negligent medical care and Defendants were deliberately

- 1 -

indifferent to his medical needs. According to Dickman, he suffered from a urinary tract infection which gradually worsened, and was ignored and/or not properly treated by the Defendants. Dickman has designated Dr. Alfred J. Koonin ("Koonin") as his expert witness.

Koonin has never treated Dickman for his alleged injuries. Dickman met Koonin in prison. Koonin is serving a 181 month sentence in federal prison for several convictions, including conspiracy to commit murder for hire, and aiding and abetting false declarations before a grand jury.[1] Before his convictions, Koonin was a surgeon, mainly performing plastic surgery or sex change operations. Koonin, however, has not practiced general medicine since 1990, and the last time he worked as full-time emergency room physician was in the late 1960's. Koonin's license to practice was also revoked in 1991 for, to say the least, grossly negligent treatment of several patients.[2] Koonin has also had about twenty six malpractice actions filed against him.

Additionally, Koonin has little, if any, experience about the subject of urology--the central issue in this case. Koonin has admittedly never published any articles relating to the subject of urology, and his curriculum vitae makes no reference to urological experience. The extent of his experience in the subject of urology consists of residency in the early 1970's. Koonin likewise has no specialized training in treating patients with urinary tract infections, has not done any research in urinary tract infection, or treated any patients with urinary tract infections.

Koonin's Rule 26 report and deposition testimony are also contradictory. For example, Koonin's Rule 26 report indicates that "[Dickman] began experiencing lower abdominal pain and other symptoms of a possible urinary-tract infection (UTI) such as dysuria." However, in his

---

[1] The Court notes that, in 2005, the Supreme Court vacated the Ninth Circuit's decision on Koonin's case. See United States v. Koonin, 361 F.3d 1250 (9th Cir. 2004), cert. granted, judgment vacated on other grounds, 543 U.S. 220 (2005) (statute of limitations is affirmative defense that is waived if not raised at trial). See also Koonin v. United States, 544 U.S. 945 (2005) ("On petition for writ of certiorari to the United States Court of Appeals for the Ninth Circuit. Petition for writ of certiorari granted. Judgment vacated, and case remanded to the United States Court of Appeals for the Ninth Circuit for further consideration in light of United States v. Booker, 543 U.S. 220, 125 S.Ct. 738, 160 L. Ed. 2d 621 (2005)."). The Supreme Court's order does not change the fact that Koonin was convicted for the crimes mentioned.

[2] In revoking Koonin's license, the California Medical Board stated that "[a]ny subsequent application of reinstatement by [Koonin] will require that he undergo a psychiatric evaluation (and psychological testing, if deemed necessary) by a Division-appointed psychiatrist . . . ." Koonin unsuccessfully applied for reinstatement in or about 2000.

deposition, Koonin testified that he did not see any complaints of dysuria. In his deposition, Koonin also identifies and acknowledges various substantive errors in his Rule 26 report. Koonin testified that there was normal urinalysis performed on Dickman which suggested no infection in December 2000, and that his Rule 26 report was incorrect in that regard. Later in his deposition, Koonin again acknowledged a substantive error in his Rule 26 report when he testified that the psychiatrist did not actually exclude the relationship between Dickman's symptoms and his medication as a possible cause. Also, in his Rule 26 report, Koonin indicated that Gentamicin was an appropriate antibiotic to treat Dickman's infection, but, in his deposition, testified that prescribing Gentamicin would probably have been "contraindicated."

Similarly, Koonin has provided inconsistent testimonies regarding the Hospital's conduct. At the first session of his deposition, Koonin testified that he had no criticism of the care the Hospital provided Dickman. At the second session of his deposition, Koonin recanted his original testimony, claiming he was "confused", despite the fact that the questions put forth to him were straight forward and unambiguous.

Against this backdrop, Defendants[3] move *in limine* to preclude Koonin from testifying.[4] Defendant Alvarado Hospital Medical Center, Inc.("Hospital") also moves for summary judgment, while Defendants Geo Group, Juan Asuncion, Jr., M.D., Jarme Condell move for reconsideration of the Court's Order denying their previous motion for summary judgment. Lastly, Dickman moves *ex parte* for an Order "allowing written communication" with Koonin within the prison.

For the reasons discussed below, Defendants' Motions are **GRANTED**. Koonin is precluded from testifying at trial. Defendants Hospital, Geo Group, Juan Asuncion, Jr., M.D., Jarme Condell are entitled to judgment, and dismissed from the action. Dickman's *ex parte*

---

[3] Except when distinguishing among the Defendants, the Court uses "Defendants" to refer to all Defendants collectively.

[4] Defendant Alvarado Hospital Medical Center, Inc. did not separately move *in limine* to preclude Koonin's testimony, but joined in the motion filed by Defendants Geo Group, Juan Asuncion, Jr., M.D., Jarme Condell. (Doc. No. 348)

- 3 -

motion is **DENIED**.[5]

## DISCUSSION

### I. Defendants' Motion to Exclude Koonin's Testimony

"Admission of expert testimony is a matter within the broad discretion of the trial judge." United States v. Andersson, 813 F.2d 1450, 1458 (9th Cir. 1987). The district court has "responsibility to keep unreliable expert testimony from the jury . . . ." United States v. Prime, 431 F.3d 1147, 1152 (9th Cir. 2005) (citing Kumho Tire Co. v. Carmichael, 526 U.S. 137, 148 (1999)). Under this "gatekeeping" responsibility, the Court has "considerable leeway in deciding . . . how to go about determining whether particular expert testimony is reliable, as well as the ultimate determination of whether the proposed expert testimony is reliable." Id. (citation and internal quotations omitted); see also Hangarter v. Provident Life and Acc. Ins. Co., 373 F.3d 998, 1017 (9th Cir. 2004) ("[J]udges are entitled to broad discretion when discharging their gatekeeping function.") (citations and internal quotations omitted); Salem v. United States Lines Co., 370 U.S. 31, 35 (1962) ("[T]he trial judge has broad discretion in the matter of the admission or exclusion of expert evidence, and his action is to be sustained unless manifestly erroneous." ); United States v. Alatorre, 222 F.3d 1098, 1102 (9th Cir. 2000) ("Nowhere . . . does the Supreme Court mandate the form that the inquiry into reliability and relevance must take . . .").

"The determination whether an expert witness has sufficient qualifications to testify is [also] within the district court's discretion." United States v. Little, 753 F.2d 1420, 1445 (9th Cir. 1984); see also Fed. R. Evid. 104(a) ("Preliminary questions concerning the qualifications of a person to be a witness . . . shall be determined by the court[.]"). "[A] witness [may be] qualified as an expert by knowledge, skill, experience, training, or education." Fed. R. Evid. 702. The Court

---

[5] Koonin's testimony and his Rule 26 report have been subjects of much controversy in this case. Defendants initially moved to dismiss this action on grounds that Dickman had failed to timely submit Koonin's report, and had not properly designated Koonin as his expert under Rule 26 of the Federal Rules of Civil Procedure. In depositions, Dickman had also testified that he was not going to use Koonin as an expert at trial. The Court denied Defendants' Motion, finding that it would be preferable to resolve Dickman's claims on the merits. Subsequently, at a status hearing, Defendants offered evidence which suggested that Dickman had forged Koonin's signature on the Rule 26 report that Dickman had submitted. The Court granted Dickman additional time to locate Koonin for taking of his deposition and certification of his "expert report." Since that time, Koonin has been deposed twice in prison by Defendants and Dickman.

"is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 152 (1999).

The party offering the expert testimony has the burden of proving admissibility. See Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 592 n.10 (1993) (citation omitted).

Here, Dickman's so called expert witness, Koonin, is not sufficiently qualified to give reliable testimony regarding the medical issues in this case. Koonin is inherently not a reliable or a trustworthy witness as he is currently incarcerated for convictions involving conspiracy to commit murder for hire, and aiding and abetting false declarations before a grand jury. Certainly the issue of an expert's qualification or reliability embraces more than his or her technical knowledge; it involves also his willingness or capacity to conform his conduct to all legal requirements. This is particularly true since expert witnesses have the potential to "be both powerful and quite misleading" because of the jury's difficulty in evaluating their testimony. Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 595 (1993) (internal quotation marks omitted); Jinro America Inc. v. Secure Investments, Inc., 266 F.3d 993, 1005 (9th Cir. 2001) (citation omitted).

Koonin's convictions are not the only reasons why he is not qualified to testify on medical questions before the Court. His license to practice medicine was revoked in 1991 for grossly negligent treatment of several patients. Moreover, Koonin has not practiced general medicine since 1990, and the last time he worked as full-time emergency room physician was in the late 1960's.[6] In addition, Koonin has been the subject of twenty-six malpractice actions. Yet his testimony would require knowledge as to the adequate and accepted standards of care and practices, and the alleged departure from them.

Moreover, Koonin has little, if any, experience about the subject of urology--the central

---

[6] Dickman places too much emphasis on the Court's prior finding that Koonin was a qualified expert witness despite revocation of his license to practice. The Court's ruling dates back to 2004. Subsequent information during Court hearings and discovery have revealed additional facts, including Koonin's convictions and incarceration, that not only place Koonin's qualification into doubt, but render him unqualified as a witness.

- 5 -

1  issue in this case. Koonin has admittedly never published any articles relating to the subject of
2  urology and his curriculum vitae makes no reference to urological experience. The extent of his
3  experience in the subject of urology consists of residency in the early 1970's. Thus, Koonin does
4  not possess sufficient expertise or knowledge as to the relevant medical questions to assist the trier
5  of fact in understanding the case. See Fed. R. Evid. § 702; see also Diviero v. Uniroyal Goodrich
6  Tire Co., 114 F.3d 851, 853 (9th Cir. 1997) ("The district court has the obligation to ensure that
7  the testimony is reliable and will help the trier of fact."). Probably given his lack of expertise,
8  Koonin has provided inconsistent testimony of his evaluation of Dickman's alleged injuries.

9        Contrary to Dickman's contention, the fact that Koonin has extensive experience in
10  performing plastic surgery or sex change operations does not render him an expert on the issues
11  before the Court. In other words, Dickman cannot qualify Koonin as an expert by showing that he
12  has specialized knowledge or training on some other issue; Koonin's specialty is entirely unrelated
13  to the medical areas before the Court. See Rogers v. Raymark Industries, Inc., 922 F.2d 1426,
14  1431 (9th Cir. 1991) ("A person qualified to give an opinion on one subject is not necessarily
15  qualified to opine on others."); Redman v. John D. Brush and Co., 111 F.3d 1174, 1179 (4th Cir.
16  1997) (holding that metallurgic expert could testify about properties and characteristics of metal
17  safe, but was not qualified to testify about industry standards for design of safes because "he had
18  never before analyzed a safe, engaged in the manufacture or design of safes, or received any
19  training regarding safes," and, "[e]ven more importantly, he was not personally familiar with the
20  standards . . . used in the safe industry.").

21        For all the reasons set forth above, Defendant's Motion to exclude Koonin's testimony is
22  **GRANTED**.

23        **II.    Defendant Hospital's Motion For Summary Judgment**

24        Defendant Hospital moves for summary judgment on the single claim Dickman asserts
25  against it. Dickman asserts that the Hospital and its emergency room physicians "failed to
26  exercise reasonable care and skill in undertaking to treat [his] urinary tract infection . . . and
27  negligently and carelessly failed to medically treat [his] condition in a timely manner . . . ." (First
28  Amended Complaint ¶¶ 39 and 108). Dickman brings this claim under California law. (Id. ¶109).

For the reasons that follow, the Hospital's Motion is **GRANTED**.

At the outset, the Court notes that Hospital has sufficiently given Dickman the fair notice required under Klingele v. Eikenberry, 849 F.2d 409 (9th Cir.1988) when it filed its motion for summary judgment. (See Doc. No. 353). See also Rand v. Rowland, 154 F.3d 952, 960 (9th Cir. 1998) ("Klingele's requirement that '[d]istrict courts are obligated to advise prisoner pro per litigants of Rule 56 requirements,' 849 F.2d at 411-12, may be met by the summary judgment movant providing the prisoner with notice.").

Turning to the substance of the Hospital's Motion, "[s]ummary judgment is appropriate if the moving party presents evidence that shows that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. Once the moving party has met this initial burden, the nonmoving party has the subsequent burden of presenting significant probative evidence tending to support its claim that material, triable issues of fact remain ." Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989) (citation omitted); see also Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). "A 'material' fact is one that is relevant to an element of a claim or defense and whose existence might affect the outcome of the suit." T.W. Elec. Service, Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987). "The materiality of a fact is thus determined by the substantive law governing the claim or defense." Id. "[I]nherently untrustworthy" evidence "does not create a triable issue of fact." United States v. Check No. 25128 in Amount of $58,654.11, 122 F.3d 1263, 1265 (9th Cir. 1997). "A scintilla of evidence or evidence that is merely colorable or not significantly probative [also] does not present a genuine issue of material fact" precluding summary judgment. Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000). See also Summers v. A. Teichert & Son, Inc., 127 F.3d 1150, 1152 (9th Cir. 1997).

Under California law, "[t]he elements of a cause of action in tort for professional negligence are: (1) the duty of the professional to use such skill, prudence, and diligence as other members of his profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the negligent conduct and the resulting injury; and (4) actual loss or damage resulting from the professional's negligence." Turpin v. Sortini, 31 Cal.3d 220,

229 -230 (1982). In essence, Dickman must show that the medical treatment he received fell below the standard of care in the medical profession. See Landeros v. Flood, 17 Cal. 3d 399, 408 (1976).

Expert medical testimony is required to establish the standard of care and whether it was breached. See Hutchinson v. United States, 838 F.2d 390, 392 (9th Cir. 1988) (citations omitted); see also Barris v. County of Los Angeles, 20 Cal.4th 101, 108 (1999) ("The standard of care against which the acts of a medical practitioner are to be measured is a matter peculiarly within the knowledge of experts; it presents the basic issue in a malpractice action . . . ."); Jones v. Ortho Pharmaceutical Corp., 163 Cal. App. 3d 396, 402-403 (1985) ("In an action for personal injury causation must be proved within a reasonable medical probability based on competent expert testimony.").

In light of the claims asserted against the Hospital, such expert testimony is admissible only if offered by a physician with "substantial professional experience[7] within the last five years while assigned to provide emergency medical coverage in a general acute care hospital emergency department." Cal Health & Safety Code § 1799.110(c). Also, "[i]n California, medical personnel are held in both diagnosis and treatment to the degree of knowledge and skill ordinarily possessed and exercised by members of their profession in similar circumstances. This standard of care, . . . can be proven only by expert testimony." Hutchinson, 838 F.2d at 392 (citations omitted).

Significantly, "California courts have incorporated the expert evidence requirement into their standard for summary judgment in medical malpractice cases. When a defendant moves for summary judgment and supports his motion with expert declarations that his conduct fell within the community standard of care, he is entitled to summary judgment unless the plaintiff comes forward with conflicting expert evidence." Id. (citation omitted).

Here, the Hospital has offered competent and admissible evidence showing that it met the standard of care when treating Dickman. Specifically, the Hospital has offered a declaration from

---

[7] Under Cal Health & Safety Code § 1799.110(c): "'substantial professional experience' shall be determined by the custom and practice of the manner in which emergency medical coverage is provided in general acute care hospital emergency departments in the same or similar localities where the alleged negligence occurred."

- 8 -

1  Charles F. Landers, M.D.  Dr. Landers is a "board certified in Internal Medicine, Pulmonary
2  Medicine, and Critical Care Medicine" and "presently the Medical Director of Critical Care at
3  Sharp Memorial Hospital."  (Landers Decl. ¶1).  Dr. Landers has reviewed Dickman's complaint
4  and relevant discovery responses, including deposition transcripts from Dickman and Koonin.  Dr.
5  Landers has also reviewed Dickman's medical records from the Hospital, Phoenix Urological
6  Surgeons, David W. Doner, Jr., M.D., Scripps Green Hospital, John C. Lincoln Hospital, Deer
7  Valley, and Imperial County Sheriff's Department.  (Id. ¶4).  Accordingly, Dr. Landers opines that
8  the "treatment of Mr. Dickman by the nurse and non-physician staff at Alvarado Hospital Medical
9  Center did meet the applicable standard of care required of a hospital at all relevant time periods
10 herein.  In addition, the treatment of Mr. Dickman by the nurse and non-physician staff at
11 Alvarado Hospital Medical Center did not cause or contribute to any injury which he is claiming."
12 (Id. ¶4).

13     Dickman, on the other hand, relies on Koonin to support his claim.  As explained above,
14 Koonin is not qualified to testify as to the medical issues before the Court.  Koonin is also not
15 qualified to testify as to the Hospital's emergency physician's alleged conduct because he is not a
16 physician with "substantial professional experience within the last five years while assigned to
17 provide emergency medical coverage in a general acute care hospital emergency department." Cal
18 Health & Safety Code § 1799.110(c).  The last time Koonin worked as full-time emergency room
19 physician was in the late 1960's.  Consequently, Dickman has essentially offered no expert
20 testimony that conflicts with the Hospital's expert evidence.  Hutchinson, 838 F.2d at 392-393.
21 Dickman's failure to "make a showing sufficient to establish the existence of an element which is
22 essential to his case and for which he would bear the burden of proof at trial" requires summary
23 judgment in favor of the Hospital.  Id. at 393.

24     **III.    Defendants Geo Group, Juan Asuncion, Jr., M.D., and Jarme Condell's**
25             **Motion For Reconsideration**

26      Dickman asserts two claims against Defendants Geo Group, Juan Asuncion, Jr., M.D.,
27 and Jarme Condell (hereinafter "Defendants"): (1) cruel and unusual punishment in violation of
28

1  the Eighth Amendment (<u>Biven</u>[8]'s claim); and (2) negligent medical care under California law. In
2  Mach 2006, the Court denied in part and granted in part Defendants' motion for summary
3  judgment. Specifically, the Court found that Geo was entitled to judgment as a matter of law
4  because Geo is a private corporation, and because Dickman's Eighth Amendment claim against
5  Geo was based on *respondeat superior* theory. The Court denied Defendants' motion in all other
6  respects because it found that Dickman had created a triable issue of fact by providing Koonin's
7  declaration. The Court, however, noted that subsequent information had put Koonin's
8  qualifications into doubt, and because Defendants had not had an opportunity to address that issue,
9  it denied Defendants' motion without prejudice. Defendants now move for reconsideration of the
10 Court's Order. Defendants' Motion is **GRANTED**.

11         At the outset, the Court again notes that the Defendants had sufficiently given Dickman the
12 required <u>Klingele</u> notice when they filed their motion for summary judgment. (<u>See</u> Doc. No. 209).
13 In their Motion, Defendants submitted declarations from several medical experts, including Drs.
14 Jeffrey Kaufman and Glenn G. Johnson. Dr. Kaufman is a board certified urologist, an Assistant
15 Clinical Professor of Urology/Surgery at the University of California, Irvine, and a Fellow of the
16 American College of Surgeons. Dr. Johnson is a physician licenses in the State of California and a
17 board certified family practitioner, practicing in patient care in correctional settings since 1984.
18 Dr. Johnson is also a Certified Correctional Professional-Advanced, and a member of the Society
19 of Correctional Physicians. Both experts are qualified to testify on the issues before the Court, and
20 opine that Dickman's medical treatments and examinations by the Defendants did not fall below
21 the standard of care, much less rise to deliberate indifference. As explained above, because
22 Koonin is not qualified to testify on the medical issues before the Court, Dickman has essentially
23 offered no expert testimony that conflicts with the Defendants' expert evidence. <u>Hutchinson</u>, 838
24 F.2d at 392-393. Accordingly, the Court **GRANTS** Defendants' Motion for Reconsideration.
25 Defendants Geo Group, Juan Asuncion, Jr., M.D., and Jarme Condell are entitled to judgment and

---

27  [8] <u>Bivens v. Six Unknown Fed. Narcotics Agents</u>, 403 U.S. 388 (1971). Under <u>Bivens</u>, "federal courts have the inherent authority to award damages against federal officials to compensate plaintiffs
28 for violations of their constitutional rights." <u>Western Center For Journalism v. Cederquist</u>, 235 F.3d 1153, 1156 (9th Cir. 2000)

- 10 -

dismissed from the action.

### IV. Dickman's Ex Parte Request For Order Allowing Written Communication With Koonin

Dickman moves, *ex parte*, for an Order allowing "written communication" with Koonin "for duration of this litigation or until such time that Dr. Koonin's services are no longer required." In light of the Court's finding that Koonin is not qualified as an expert and that he cannot, therefore, testify at trial, Dickman's Motion is **DENIED.**

### CONCLUSION

For the reasons discussed above, Defendants' Motions are **GRANTED**. Koonin is precluded from testifying at trial. Defendants Hospital, Geo Group, Juan Asuncion, Jr., M.D., Jarme Condell are entitled to judgment, and dismissed from the action. Dickman's *ex parte* motion is **DENIED**

**SO ORDERED**.

DATED: November 14, 2006

_____
Hon. Roger T. Benitez
United States District Judge

cc: All parties and respective counsel

- 11 -